UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MARMOL, OBO | ) | CASE NO.  1:12CV1930 |
| JOHN MARMOL | ) | |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying John Marmol (hereinafter referred to as Plaintiff) Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his June 28, 2011 decision in finding that Plaintiff was not disabled because he could perform a reduced range of light work (Tr. 26-34).  The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

I.      **PROCEDURAL HISTORY**

Plaintiff filed his application for DIB and SSI on March 12, 2009, alleging disability beginning November 22, 2007, due to left knee pain, right eye blindness, hypertension, sciatica, carpal tunnel syndrome, anxiety, and depression (Tr. 141-51, 167).  Plaintiff's claim was denied at the initial level

1

of the administrative review process (Tr. 81-87), and upon reconsideration on January 11, 2010 (Tr. 92-105).

At Plaintiff's request, the ALJ held a hearing on February 15, 2011, at which Plaintiff, who was represented by counsel, and a vocational expert (VE) testified (Tr. 40-76).  At the hearing, Plaintiff requested to amend his alleged onset date of disability to July 1, 2009, which the ALJ denied (Tr. 26, 46-47, 161).  On June 28, 2011, the ALJ issued a decision, finding that Plaintiff could perform a significant number of jobs in the national economy, and, therefore, was not disabled under the Act (Tr. 26-34).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). Plaintiff now seeks judicial review of the ALJ's decision, pursuant to 42 U.S.C. Sections 405(g) and 1383©.


## II.    STATEMENT OF FACTS

Plaintiff was forty-eight years old on his onset date (Tr. 141).  Plaintiff previously worked as a general laborer, inspector in a die and mold company, and janitor (Tr. 46).  After his onset date, beginning in June 2008, Plaintiff reported that he worked as a landscaper (Tr. 435, 455).

Plaintiff lived with his wife and friends (Tr. 49, 180).  Plaintiff used public transportation, groomed himself, shopped for groceries, and watched television (Tr. 182-84).  Plaintiff spent most days walking to friends' homes and drinking with them (Tr. 188).  Plaintiff stated that he spent most days sleeping, watching television, and drinking with his landlord (Tr. 524).  Plaintiff admitted to getting intoxicated "as often as possible" (Tr. 523).  Plaintiff also smoked a pack of cigarettes a day, and was "unwilling to quit" (Tr. 415).

2

## III.     SUMMARY OF MEDICAL EVIDENCE

### A.     Treatment For Bank Pain

In 1992, Plaintiff injured his back lifting a large floor jack (Tr. 612).  Plaintiff reported that he continued to work after his injury until 2007 (Tr. 612).  A few months prior to Plaintiff's onset date, he visited the emergency room (ER) for a drug overdose, because he took over twenty muscle relaxers to relieve his back pain and "catch a buzz" (Tr. 248, 251).  While in the ER, he admitted to a history of drug abuse and alcoholism (Tr. 248).

From June 2007 through March 2008, Plaintiff was treated at Neon Convenient Care, where they refilled prescriptions of Percocet (acetaminophen and oxycodone) (Tr. 256, 269).  In December 2007, Plaintiff reported that his pain level was 2-1/2 to 3 out of 10 (Tr. 269).  On January 14, 2008, Plaintiff reported that his pain level was 1-1/2 out of 10 (Tr. 270).  Plaintiff also reported that he was fired from his job and was suing the company, but planned to return to that job (Tr. 270).  In February, Plaintiff reported that his pain level was 2 out of 10 (Tr. 271).  In March 2008, Plaintiff reported that his pain level was 8 out of 10, so he was referred to a pain management specialist (Tr. 273).

At a June 2008 appointment with Eugene Lin, M.D., a pain management specialist, Plaintiff complained of left-sided back pain radiating down to his left foot (Tr. 455).  Plaintiff reported that he had not been going to occupational therapy, because he started working as a landscaper (Tr. 455).  Dr. Lin noted that Plaintiff walked with an antalgic gait, but had normal reflexes, sensation, and strength (Tr. 455).  Plaintiff had a positive Faber test (testing for sacroiliac and hip joint problems) on his left for back and hip pain, and tenderness in his lumbosacral area (Tr. 455).  Dr. Lin prescribed physical therapy (Tr. 455).

On July 31, 2008, Plaintiff visited the ER, complaining of back pain (Tr. 283).  Plaintiff was diagnosed with left-sided sciatica, given two Percocet tablets, and told to follow up with his pain

3

management physician (Tr. 284).  Plaintiff returned the next day, continuing to complain of back pain, but he could ambulate without any difficulty and denied numbness or tingling (Tr. 274-75).  Plaintiff was told to follow up with his primary care physician and to visit the pain management clinic to negotiate his narcotic prescriptions (Tr. 276).

On August 5, 2008, Plaintiff followed up with Dr. Lin (Tr. 435).  Plaintiff was still complaining of low back pain, but no numbness or weakness (Tr. 435).  Dr. Lin noted that Plaintiff walked with an antalgic gait, but had normal reflexes, sensation, and strength (Tr. 435).  Plaintiff had a positive Faber test on his left for back and hip pain, tenderness in his lumbosacral area, and tight left hamstrings (Tr. 435).  Dr. Lin opined that Plaintiff would benefit from physical therapy for core strengthening and hamstring stretches (Tr. 436).  He refilled Plaintiff's prescription for Percocet, but stated he would not provide any early refills (Tr. 436).

In two visits to Dr. Lin in October 2008, Plaintiff continued to complain of low back pain and tightness in his hamstrings while walking (Tr. 424, 431).  On examination, Plaintiff had decreased rotation of his hip, but negative straight leg raises (Tr. 425, 431).  Plaintiff also had normal reflexes, sensation, and strength (Tr. 425, 431).  X-rays of Plaintiff's pelvis and spine on October 15, 2008 revealed no evidence of a fracture or subluxation, but, rather, only mild lumbar spine levoscoliosis and disc narrowing at the L5-S1 level with a slight reversed spondylolisthesis (Tr. 327-28).  An MRI of Plaintiff's lumbar spine on November 5, 2008 showed slight scoliosis, multilevel disc degeneration, and facet arthropathy (Tr. 326).  There was also slight retrolisthesis at the L5-S1 level with marked foraminal stenosis on the left, but no frankly extruded disc fragment (Tr. 326).

At a November 21, 2008 visit with Dr. Lin, Plaintiff reported that he attended three physical therapy sessions, but had only temporary relief (Tr. 344).  Dr. Lin recommended a consultation for an injection of L5-S1 on the left with Michael Schaefer, M.D. (Tr. 344).  Dr. Lin also refilled

4

Plaintiff's prescriptions for Percocet and Neurontin, and recommended that Plaintiff continue physical therapy (Tr. 344).

On January 2 and May 26, 2009, Plaintiff visited Dr. Schaefer for an injection of L5-S1, but he was unable to receive it because his blood pressure was too high at one visit and too low at the other visit (Tr. 411, 578).

Plaintiff visited the ER on September 1, 2009, complaining of low back pain after lifting a heavy garbage bag (Tr. 598).  On examination, although Plaintiff had midline and paraspinal tenderness, he had full range of motion in all extremities, his cranial nerves were intact, he had negative straight leg raises, and normal strength, sensation, and gait (Tr. 599).  Plaintiff was diagnosed with a lumbar strain and chronic back pain (Tr. 601).  Plaintiff revisited the ER ten days later, on September 11, 2009, complaining of increased back pain after he was sitting in a chair that broke (Tr. 565).  On examination, Plaintiff had muscle spasm in his back, but his extremities were non-tender and he had normal range of motion (Tr. 560).  Plaintiff was told to follow up with his pain management physician (Tr. 560).

Plaintiff visited Laurence Bilfield, M.D. on September 23, 2009, complaining of low back pain, left leg pain, and carpal tunnel in both hands (Tr. 582).  On examination, Dr. Bilfield noted that Plaintiff ambulated with a mildly antalgic gait to the left, had positive straight leg raises on the left, but negative on the right (Tr. 582).  Dr. Bilfield recommended an updated lumbar spine MRI to determine if surgical intervention was necessary (Tr. 583).

Plaintiff followed up with Dr. Bilfield five days later, and again on October 28, 2009 (Tr. 580-81).  Dr. Bilfield noted that Plaintiff had positive straight leg raises on the left, but was negative on the right (Tr. 580-81).  Plaintiff also ambulated well with a nonantalgic gait, although he was using a cane (Tr. 580).  Dr. Bilfield refused to recommend surgical intervention without an updated

MRI (Tr. 580).  Dr. Bilfield, instead, recommended that Plaintiff continue conservative treatment, including therapy and Ultram (narcotic-like pain reliever) (Tr. 580-83).

X-rays taken of Plaintiff's lumbar spine on April 12, 2001 showed slight scoliosis convexed towards the left and disc space narrowing with spurring at all lumbar levels, which was indicative of a degenerative change (Tr. 617).

**B.**    Treatment For Carpal Tunnel Syndrome

Three months prior to Plaintiff's alleged onset date, he visited the ER after injuring his right hand at work (Tr. 299).  Plaintiff reported that he injured his left hand "a while ago," but was continuing to experience pain and swelling (Tr. 299).  X-rays of Plaintiff's left hand taken in September 2007 showed a healing fracture, but x-rays of his right hand showed no identifiable abnormalities (Tr. 330-31).

At visits in January and February 2008 with Dr. Lin, Plaintiff complained of left hand pain (Tr. 474, 482).  An EMG showed moderate bilateral carpal tunnel with no ulnar mono neuropathy (Tr. 482).  Plaintiff had less tenderness to palpitation over his third metacarpal, but had positive Tinel signs at his bilateral wrists (Tr. 474, 482).  Dr. Lin recommended that Plaintiff participate in occupational therapy, continue taking Neurontin (a non-narcotic pain reliever) and Percocet, and wear bilateral carpal tunnel syndrome splints at night and at work (Tr. 474, 482).  In April 2008, Plaintiff reported that he stopped working (Tr. 462).  On examination, Dr. Lin noted numbness in median nerve and positive Tinel signs (Tr. 462).  Dr. Lin recommended that Plaintiff taper off Percocet and receive left carpal tunnel syndrome injections and occupational therapy (Tr. 462).

In May 2008, Plaintiff visited Dr. Lin and reported that his left wrist was "feeling much better," his right elbow was "mildly improved," but his right wrist still had pain and finger numbness (Tr. 460).  Plaintiff had not started occupational therapy, as recommended (Tr. 460).  On

examination, Dr. Lin noted right wrist had positive Tinel signs and numbness in the third and fourth digits (Tr. 460). Dr. Lin refilled Plaintiff's prescriptions for Neurontin and Percocet, recommended a right carpal tunnel injection, and scheduled occupational therapy (Tr. 460). He also recommended that Plaintiff decrease wearing the wrist brace, but wear a tennis elbow brace (Tr. 460).

At a June 2008 appointment with Dr. Lin, Plaintiff reported improvement in his symptoms following an injection to his medial flexor (Tr. 455). Plaintiff visited Dr. Lin in September 2008, complaining of left hand pain with some improvement with medication (Tr. 433). Plaintiff reported that he was not using his elbow splint as much (Tr. 433).

Plaintiff visited Dr. Bilfield in September 23, 2009, complaining of carpel tunnel syndrome in both hands (Tr. 582). On examination, Dr. Bilfield noted that Plaintiff's hands had positive Tinel and Phalen signs and decreased sensation in the median nerve distribution (Tr. 582). Dr. Bilfield recommended an EMG of Plaintiff's hands, to determine if surgical intervention was necessary (Tr. 583).

C.    Consultative Examination

Plaintiff visited Kimberly Togliatti-Trickett, M.D. for a consultative examination on April 12, 2011 (Tr. 608). Dr. Togliatti-Trickett noted on examination that Plaintiff had normal range of motion in his shoulders, elbows, wrists, fingers, hips, knees (with minor limitation), and feet, but decreased range of motion in his dorsolumbar spine (Tr. 608, 610. Although the dynamotmeter readings showed that Plaintiff had slightly reduced strength in his hands, Dr. Togliotti-Trickett suspected "limited effort" (Tr. 608). Plaintiff had normal grasp, manipulation, pinch, and fine coordination bilaterally (Tr. 614). Although Plaintiff's gait was antalgic on the left lower extremity without the use of a cane, he had normal ambulation on heels and toes (Tr. 613). Dr. Togliotti-Trickett noted that Plaintiff had normal sensation and strength, and no evidence of muscle spasm,

primitive reflex, or muscle atrophy (Tr. 614).  Plaintiff had negative Tinel signs at the median nerve

at the wrists bilaterally (Tr. 614).  Plaintiff also had negative straight leg raises and slump test

bilaterally (Tr. 614).

Dr. Togliatti-Trickett opined that Plaintiff could stand and walk for at least three to four

hours at a time with no problem sitting; he could lift and carry objects up to ten pounds on occasion

without difficulty; and he had no problems hearing, seeing, speaking, traveling, or handling objects

on an intermittent basis (Tr. 614).  Dr. Togliatti-Trickett opined that Plaintiff could perform light

or sedentary work (Tr. 614).

D.      The State Agency Physicians' Assessments

Edmond Gardner, M.D., a state agency physician, reviewed Plaintiff's medical records on July 13,

2009, and concluded that Plaintiff could perform light work with occasional stooping and crouching,

frequent handling and fingering, but no climbing of ladders, ropes, and scaffolds (Tr. 546-53).

Myung Cho, M.D., another state agency physician, reviewed Plaintiff's medical records, and

concurred with Dr. Gardner's assessment (Tr. 586).

E.      Death Of Plaintiff

On December 15, 2011, Plaintiff was found dead in his home.  The County Coroner's Office

determined that he died of hypertensive and atherosclerotic cardiovascular disease.  The medical

evidence of record indicates that Plaintiff had a longstanding history of high blood pressure that

often went untreated (Tr. 260-262, 268, 340, 342, 414, 352, 622).

**IV.**     **SUMMARY OF TESTIMONY**

At his hearing on February 15, 2011, Plaintiff testified that he has pain in his hands and low

back.  He stated that his hands have hurt on a daily basis since 2008, and prevent him from holding

8

on to things like coffee cups and Pepsi cans, and doing buttons (Tr. 55-57).  He reported that lifting a gallon of milk puts too much strain on his wrist (Tr. 60).

Plaintiff testified that his low back pain began in 2007.  He reported that over time, it became progressively worse.  Plaintiff stated that he is limited in his ability to stand and walk, and often loses balance.  He reported using a cane since 2008, and that it was prescribed (Tr. 57-59).  He testified to being able to walk approximately two blocks, and sitting thirty minutes (Tr. 58, 62).

Plaintiff testified that he has been unable to secure medical treatment since November 2009, and often goes without medications for financial reasons (Tr. 54, 65).

Thereafter, the VE testified as to whether there were a significant number of jobs in the national economy that an individual with Plaintiff's limitations could perform (Tr. 66-75).  The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience, who was able to perform simple, sedentary work with occasional stooping and crouching, up to frequent handling and fingering, but no climbing of ladders, ropes, and scaffolds, and limited depth perception (Tr. 70-72).  The VE responded that such an individual could not perform his past relevant work, but could perform unskilled jobs, such as a lampshade assembler, table worker, and order clerk (Tr. 72-73).

**V.      STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2.    An individual who does not have a "severe impairment" will not be

9

found to be "disabled" (20 C.F.R. 404.1520© and 416.920(C)(1992);

3.    If an individual is not working and is suffering from a severe impair-
ment which meets the duration requirement, *see* 20 C.F.R. 404.1509
and 416.909 (1992), and which meets or is equivalent to a listed
impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of
disabled will be made without consideration of vocational factors (20
C.F.R. 404.1520(d)  and 416.920(d) (1992);

4.    If an individual is capable of performing the kind of work he or she
has done in the past, a finding of "not disabled" must be made (20
C.F.R. 404.1520(e) and 416.920(e) (1992);

5.    If an individual's impairment is so severe as to preclude the
performance of the kind of work he or she has done in the past, other
factors including age, education, past work experience and residual
functional capacity must be considered to determine if other work can
be performed (20 C.F.R. 404.1520(f)  and  416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden of going forward

with the evidence at the first four steps and the Commissioner has the burden at Step Five to show

that alternate jobs in the economy are available to the claimant, considering his age, education, past

work experience and residual functional capacity.  *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th

Cir. 1990).

## VI.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and

makes a determination of disability.  This Court's review of such a determination is limited in scope

by Section  205 of the Act, which states that the "findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. Section 405(g).

Therefore, this Court is limited to determining whether substantial evidence supports the

Commissioner's findings and whether the Commissioner applied the correct legal standards.  *See,*

*Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the ALJ's decision,

10

even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII.  ANALYSIS

The Plaintiff raises two issues:

I.    Whether the ALJ properly assessed Plaintiff's credibility regarding pain.

II.   Whether the ALJ's determination that Plaintiff can perform light work is supported by substantial evidence.

The Administrative Law Judge (ALJ) correctly determined that Plaintiff was not disabled within the meaning of the Act. Although Plaintiff alleged that his back and hand pain were disabling, he worked after his alleged onset date, and spent most days walking to friends' houses and drinking with them. Plaintiff's medical records and conservative treatment demonstrate that he could perform a reduced range of light work. The undersigned concludes that substantial evidence supports the Commissioner's decision.

In this case, the Commissioner applied the five-step sequential evaluation process to evaluate disability claims. The ALJ proceeded through all five steps of the sequential evaluation process, and correctly concluded that Plaintiff was not disabled within the meaning of the Act. In evaluating

11

Plaintiff's claim, the ALJ determined that Plaintiff did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 30-31), Finding No. 4).  20 C.F.R. Sections 404.1520(d), .1525, .1526; 416.920(d), .925, .926.  In addition, in evaluating Plaintiff's claim, the ALJ determined that, although Plaintiff's impairments were severe, he retained the residual functional capacity (RFC) to perform a reduced range of light work, which accounted for his credibly-established functional limitations (Tr. 28-33, Finding Nos. 3 and 5).  The requirements of the unskilled jobs of lampshade assembler, table worker, and order clerk that the VE identified were consistent with the ALJ's RFC finding (Tr. 33-34, Finding No. 10).

After reviewing the entire record, the ALJ limited Plaintiff to a reduced range of light work (Tr. 31-33, Finding No. 5), based upon the following evidence:

- Plaintiff was conservatively treated with pain medication, physical therapy, and carpal tunnel injections (Tr. 256, 259, 344, 436, 455, 462, 580-81);

- Plaintiff reported that he worked as a landscaper after his alleged onset date (Tr. 435, 455);

- Plaintiff had normal reflexes, sensation, and strength (Tr. 425, 431, 435, 455, 599, 614);

- Plaintiff had no evidence of muscle atrophy (Tr. 614);

- Plaintiff had normal hand grasp, manipulation, pinch, and fine coordination bilaterally (Tr. 614);

- Plaintiff was able to use public transportation, groom himself, shop for groceries, and watch television (Tr. 182-84);

- Plaintiff spent most days walking to friends' homes and drinking with them (Tr. 188);

- Dr. Togliotti-Trickett noted that, despite Plaintiff's complaints of pain, he could

12

perform light or sedentary work (Tr. 612-14); and

- The state agency physicians opined that Plaintiff could perform light work (Tr. 546-53, 586).

The above evidence supports the ALJ's assessment as to the RFC that Plaintiff could perform limited light work.

Further, the ALJ is not required to adopt the opinion of any medical source, treating or otherwise, on the issue of disability. 20 C.F.R. Sections 404.1527(d), 416.927(d); *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir. 1994). The ALJ must perform an independent analysis of the relevant evidence, and develop an appropriate RFC based upon that evidence. 20C.F.R. Sections 404.1545, 416.945. In this case, the ALJ reviewed the evidence of record, and determined Plaintiff's RFC, as required by the Commissioner's regulations. *See, Richardson v. Perales,* 402 U.S. 389, 399 (1971). Based upon substantial evidence, the ALJ correctly found that Plaintiff retained the capacity for a reduced range of light work, and was not disabled within the meaning of the Act. *See, Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001).

Plaintiff argues that the ALJ improperly applied the opinion of Dr. Togliotti-Trickett, because he did not specifically include her lifting and handling restrictions (Pl.'s Br. at 11-13). However, although the ALJ considered the findings and conclusions of Dr. Togliotti-Trickett, he was not required to adopt her entire opinion and include every restriction (Tr. 32). *See, e.g., Lambert-Newsome v. Astrue,* No.11-1141-CJP, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012); *Woodrome v. Astrue,* No. 11-0288, 2012 WL 1657216, at *3 (W.D. Mo. May 10, 2012); *Irvin v. Astrue,* 11-23-AJW, 2012 WL 870845, at *2-3 (C.D. Cal. March 14, 2012).

Here, the ALJ correctly excluded the intermittent handling limitation from Dr. Togliotti-Trickett's assessment, as it was inconsistent with Dr. Togliotti-Trickett's findings on examination, but, rather, was based on Plaintiff's subjective complaints of difficulty with handling objects on a

repetitive basis (Tr. 614).  20 C.F.R. Sections 404.1527(c)(3), .1527(c)(4), 416.927(c)(3), .927(c)(4).

Dr. Togliotti-Trickett noted that Plaintiff had negative signs at his median nerve at the wrists

bilaterally (Tr. 614).  Dr. Togliotti-Trickett also found that Plaintiff had normal hand grasp,

manipulation, pinch, and fine coordination bilaterally (Tr. 614).  Further, although the dynamometer

readings showed that Plaintiff had slightly reduced strength in his hands, Dr. Togliotti-Trickett

suspected "limited effort" (Tr. 608).  Dr. Togliotti-Trickett noted that Plaintiff had normal sensation

and strength, and no evidence of muscle spasm, primitive reflex, or muscle atrophy (Tr. 614).

Furthermore, the ALJ correctly excluded the lifting limitation from Dr. Togliotti-Trickett's

assessment, as it was similarly inconsistent with Dr. Togliotti-Trickett's findings on examination and

based on Plaintiff's stated limitation (Tr. 613-14).  20 C.F.R. Sections 404.1527(c)(3), .1527(c)(4),

416.927(c)(3), .927(c)(4).  Nevertheless, Dr. Togliotti-Trickett opined that Plaintiff could perform

light or sedentary work, which is consistent with the ALJ's RFC (Tr. 614).

Plaintiff also argues that the evaluation of Plaintiff's credibility was not supported by

substantial evidence of record (Pl.'s Br. at 7-11).  However, when assessing Plaintiff's RFC, the ALJ

did consider Plaintiff's subjective complaints (Tr. 31-33).  20 C.F.R. Sections 404.1545(e),

416.945(e).  As the ALJ concluded, although Plaintiff's medically-determinable impairments could

be expected to produce his alleged symptoms, his statements regarding the intensity, persistence, and

limiting effects of his symptoms were not credible (Tr. 31).

The ALJ, as the finder of fact, is given great deference in making credibility findings.  *See,*

*Bieber v. Dep't of the Army,* 287 F.3d 1358, 1364 (Fed. Cir. 2002).  Because an ALJ is charged with

observing the witness' demeanor, his findings on credibility must be accorded great weight and

deference.  *See,* 20 C.F.R. Sections 404.1529©, 416.929©.  A claimant's own description of his

impairment and symptoms, standing alone, is not enough to establish disability.  20 C.F.R. Sections

404.1528(a), .1529(a), 416.928(a), .1529(a).

In this case, the ALJ correctly found that Plaintiff's subjective complaints concerning his pain and limitations were not fully credible (Tr. 28). In making his assessment, the ALJ considered Plaintiff's statements and symptoms, including pain, and the extent to which these can be accepted as consistent with the objective medical evidence and the other evidence based on the requirements of 20 C.F.R. Sections 404.1529, 416.929, and Social Security Ruling (SSR) 96-7p, 1996 WL 374186 (S.S.A.. 1996) (Tr. 27-30). The objective medical evidence and limited treatment history do not support Plaintiff's claims of completely debilitating pain and limitations. *See,* 20 C.F.R. Sections 404.1529(c)(2), (c)(3)(v), 416.929(c)(2), (c)(3)(v). None of the physicians imposed significant physical limitations due to Plaintiff's back and hand pain. Dr. Bilfield recommended that Plaintiff continue "conservative treatment" (Tr. 580-81). Dr. Togliatti-Trickett opined that Plaintiff could perform light or sedentary work (Tr. 614). Further, Drs. Gardner and Cho opined that Plaintiff was capable of performing light work (Tr. 546-53, 586). 20 C.F.R. Sections 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 374180 (S.S.A.). These opinions constitute substantial evidence that Plaintiff's pain was not as limiting as he alleged.

Plaintiff's credibility was also undermined by his inconsistent statements (Tr. 33). In a mental health assessment in February 2008, required by his insurance company after he had received multiple pain medicine prescriptions from multiple providers, Plaintiff denied drinking alcohol and having ever used street drugs (Tr. 468-69). However, eight months earlier, in June 2007, Plaintiff visited the ER for a drug overdose, where he took over twenty muscle relaxers to relieve his back pain and "catch a buzz," while in the ER he admitted to a history of drug abuse and alcoholism (Tr. 248, 251). At the hearing, Plaintiff admitted that he abused Demerol (opioid pain reliever) in the 1980's (Tr. 82). In addition, in a psychological consultation in May 2009, he admitted to getting intoxicated "as often as possible" (Tr. 523). Furthermore, Plaintiff spent most days walking to friends' houses and drinking with them (Tr. 180, 188). These inconsistencies undermine the

15

credibility of Plaintiff's statements.

The ALJ correctly considered Plaintiff's contradictory statements and activities as part of his credibility assessment.  *See,* 20 C.F.R. Sections 404.1529(c)(3)(i), 416.929(c)(i).  Furthermore, the Plaintiff admitted working, which is also an indication that he is not totally disabled (Tr. 435, 455). 20 C.F.R. Sections 404.1571, 416.971.

Although Plaintiff claimed that he could not afford certain medications and treatment, he smoked a pack of cigarettes a day, and was "unwilling to quit" (Tr. 415).  *See,* 20 C.F.R. Sections 404.1530, 416.930; *Riggins v. Apfel,* 177 F.3d 689, 693 (8th Cir. 1999); *Mannisi v. Astrue,* No. 4:07cv328, 2008 WL 441767, at *22 (E.D. Mo. Feb. 14, 2008).  Plaintiff smoking a pack of cigarettes a day undermines his credibility in regard to his claim that he could not afford medication.

Finally, the ALJ gave the proper weight to Plaintiff's subjective complaints, when he restricted him to a reduced range of light work that accounted for his functional limitations (Tr. 31-33, Finding No. 5).  Hence, the ALJ correctly found that Plaintiff's subjective complaints were not entirely credible.

**VIII.  CONCLUSION**

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of light work, and, therefore, was not disabled.  Hence, he is not entitled to DIB and SSI.

Dated: March 19, 2013                              */s/George J. Limbert*
                                                           GEORGE J. LIMBERT
                                                           UNITED STATES MAGISTRATE JUDGE